```
                IN THE UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

                           MIAMI DIVISION

                    CASE NO.:  17-cv-60999-KMM




ANGELICA MIRA,                    )
                                  )
        Plaintiff,                )         October 3, 2017
                                  )
                                  )
VILLAGIO OF SAWGRASS, INC.,       )
et al.,                           )         Pages 1 - 15
                                  )
        Defendants.               )
_____/




                       SETTLEMENT CONFERENCE

              BEFORE THE HONORABLE ANDREA M. SIMONTON
                   UNITED STATES MAGISTRATE JUDGE




APPEARANCES:


On behalf of the Plaintiff:

                      OBRONT COREY PLLC
                      100 S. Biscayne Boulevard
                      Suite 800,.
                      Miami, FL 33131
                      BY:  PETER J. MATHEWS, ESQ.
```

```
 1
      APPEARANCES CONTINUED:
 2
      On behalf of the Defendant:
 3
                         GRAY ROBINSON
 4                       50 N Laura Street.
                         Suite 1100
 5                       Jacksonville, FL 32202
                         BY:  WILLIAM H. ANDREWS, ESQ.
 6

 7

 8
      Transcribed By:
 9
                         BONNIE JOY LEWIS, R.P.R.
10                       7001 SW 13 Street
                         Pembroke Pines, FL  33023
11                       954-985-8875
                         caselawrptg@gmail.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        (Thereupon, the following proceeding was held:)
2        THE COURTROOM DEPUTY:  Calling Case Number
3   17-60999-civil Chief Judge Moore; Angelica Mira versus Villagio
4   of Sawgrass, Inc., et. al.
5        Counsel, would you please note your appearances for
6   the record.
7        MR. MATHEWS:  Peter Mathews for the Plaintiff Angelica
8   Mira.
9        THE COURT:  And Miss Mira is present at well; is that
10  correct?
11       MR. MATHEWS:  Yes, Your Honor.
12       THE COURT:  Okay.  And Mr. Kalas?
13       MR. KALAS:  Yes, present.
14       THE COURT:  Okay.  Would you just state your name for
15  the record.
16       MR. KALAS:  Kosmos Alexander Kalas.
17       THE COURT:  Okay.  Thank you, Mr. Kalas.
18       As I understand it, Mr. Billante is not in attendance
19  and his health did not permit him to attend today.
20       Mr. Andrews has been present since 9:00 this morning
21  up until roughly twenty minutes ago where he left to go to the
22  airport and a settlement was reached.
23       Although he is not present right now, as I understand
24  it, Mr. Mathews, you've spoken to him regarding the terms of
25  the settlement agreement?

1        MR. MATHEWS:  Yes, Your Honor.

2        THE COURT:  And I know my courtroom deputy was calling

3   him briefly and he was getting out of a cab and was not really

4   able to confer with us at that time.

5        So there are two ways we can do this.  I understand

6   that both sides have consented to me exercising jurisdiction;

7   is that correct, Mr. Kalas?

8        MR. KALAS:  That is correct.

9        THE COURT:  And do you agree to be participating here

10  while your attorney had an urgent flight that he needed to

11  attend or he had an urgent matter that he needed to attend

12  regarding health related issues of his fiance.

13        And you elected to continue on in his absence; is that

14  correct?

15        MR. KALAS:  I agree.

16        THE COURT:  Okay.  And Mr. Mathews, do you have a

17  problem with that?

18        MR. MATHEWS:  No, Your Honor.

19        THE COURT:  What I would like to do, then, if you will

20  just state the material terms of the settlement agreement -- I

21  know I have spoken to both of you as well as the attorneys on

22  the record.

23        And then, I will confirm with each of the parties that

24  they agree to be bound.  So it will be a binding settlement

25  agreement subject to it being formally executed.

1            Is that agreeable?
2            MR. MATHEWS:  Yes, Your Honor.
3            THE COURT:  And Mr. Kalas, is that agreeable?
4            MR. KALAS:  Yes, it is.
5            THE COURT:  Okay.  So do you want to tell me the
6   material terms, Mr. Mathews?
7            MR. MATHEWS:  Yes, Your Honor.
8            We agreed to set off for $18,000 inclusive of
9   attorney's fees.
10           THE COURT:  Okay.  And what is the breakdown of that?
11           MR. MATHEWS:  Yes.  We agreed to $11,000 and $7,000.
12           THE COURT:  And who gets what?
13           MR. MATHEWS:  $11,000 for Miss Mira and $7,000 for the
14  attorneys, Your Honor.
15           THE COURT:  And Miss Mira's will be divided into
16  basically $5500 back wages and $5500 liquidated damages?
17           MR. MATHEWS:  Yes, Your Honor.
18           THE COURT:  And how will the payment be made?
19           I know it will be made by the Defendant, but in terms
20  of what are the terms; when is it due, who is it made payable
21  to?  Have you worked out all those details or do you need some
22  additional time to --
23           MR. MATHEWS:  Your Honor, we have not been confirmed
24  all the payment details.  I don't imagine there are any issues,
25  but those have not been confirmed.

```
 1              THE COURT:  Okay.  So the payment details need to be
 2   confirmed before.  And is there going to be a written
 3   settlement agreement?
 4              MR. MATHEWS:  Yes, Your Honor.
 5              THE COURT:  Okay.  And what are the nonfinancial
 6   terms?
 7              MR. MATHEWS:  We have agreed to mutual non
 8   disparagement, Your Honor.  They've agreed to provide a neutral
 9   reference and we have also agreed to confidentiality.
10              THE COURT:  Okay.  And when will the payment be made?
11              MR. MATHEWS:  Your Honor, we haven't negotiated that.
12   Typically it is 30 days from the --
13              THE COURT:  Okay.  Mr. Kalas, have you discussed when
14   the payment will be made or the payment terms?
15              MR. KALAS:  We haven't discussed that.
16              THE COURT:  Okay.  Because that is usually a material
17   term of the settlement agreement.
18              Perhaps, Alicia, we can get Mr. Kalas on the phone --
19   we have Mr. Kalas here in person.  If we could get Mr. Andrews
20   on the phone, or we can try, and maybe he can confirm.
21              So that is payment within 30 days of the date of
22   dismissal?
23              MR. MATHEWS:  Yes, Your Honor.
24              THE COURTROOM DEPUTY:  Mr. Andrews, are you okay to be
25   on the phone now?  Hello?  Are you okay to be on the phone now?
```

```
 1             Okay.  Hold on one second.
 2             THE COURT:  Mr. Andrews, are you there?
 3             MR. ANDREWS:  I am.
 4             THE COURT:  Hi.  This is Andrea Simonton.  We're in
 5   the courtroom confirming certain details.
 6             MR. ANDREWS:  Okay.
 7             THE COURT:  And so the first I'm confirming is that
 8   you and your client has confirmed that you are consenting to my
 9   jurisdiction.  And you agree that Mr. Mathews can sign your
10   name with your approval to the consent form.
11              Is that correct?
12             MR. ANDREWS:  That is correct.
13             THE COURT:  We have the details regarding the amount
14   of the payment and the division between the attorneys.
15              And in terms of who the check will be made available
16   to and whether it is one check or two checks will need to be
17   worked out between the parties, but I assume that is not a
18   material term of the settlement agreement.
19              Is that correct?
20             MR. ANDREWS:  That is also correct, yes.
21             THE COURT:  Okay.  There, there is non disparagement
22   clause.  A neutral reference will be provided to the Plaintiff
23   and a confidentiality of the terms of the agreement.
24              Is that correct?
25             MR. ANDREWS:  Yes, ma'am.
```

```
 1              THE COURT:  And nobody knows the terms of when payment
 2  will be made.  Mr. Mathews said it is typically within 30 days
 3  from the date of dismissal.
 4              MR. ANDREWS:  That's fine.
 5              THE COURT:  Okay.
 6              MR. MATHEWS:  Your Honor --
 7              THE COURT:  Yes.
 8              MR. MATHEWS:  I misspoke.
 9               I have typically seen 30 days from when a signed
10  stipulation is provided to the other side and not when the
11  order is entered.
12              THE COURT:  Okay.  Within 30 days of the execution of
13  the settlement agreement.
14              MR. MATHEWS:  30 days from the execution of the
15  settlement agreement is preferable.
16              THE COURT:  Okay.  Thirty days from the date of the
17  execution of the settlement agreement.
18               Is that acceptable, Mr. Andrews?
19              MR. ANDREWS:  Well, listen, I would rather have it
20  simultaneous with the filing stipulated to the dismissal with
21  prejudice.
22              THE COURT:  Okay.  So when the joint stipulation for
23  dismissal is filed it will be, payment will be within 30 days
24  from that date?
25              MR. ANDREWS:  Your Honor, that's probably I ought to
```

1 check with on my client.  I assume the funds will be readily
2 available.
3         THE COURT:  Well, I've got an idea.
4         Why don't we do this.  Why don't we adjourn for today.
5 We will file the consent.
6         The two of you can get together tomorrow.  And if I
7 need to have a brief telephonic hearing some time tomorrow, you
8 know, you can call me or you can exchange, you know, whatever
9 it is you need to exchange, or because I think payment, the
10 time of payment is typically a material matter.  At least
11 that's what --
12         MR. ANDREWS:  Right.
13         THE COURT:  And that's something that you haven't
14 discussed or agreed on.
15         MR. ANDREWS:  Right.
16         THE COURT:  So I am reluctant to do anything until
17 that is agreed on.
18          I don't know.  Mr. Kalas, when do you think payment is
19 appropriate?
20         MR. KALAS:  I would agree with you, Your Honor.
21         THE COURT:  Agree with me for what?  I gave you four
22 different scenarios.
23         MR. KALAS:  They got to together.  Get the act
24 together.
25         THE COURT:  Okay.

```
 1             MR. KALAS:  Record it and it will be 30 days
 2   subsequent, within 30 days.
 3             THE COURT:  Okay.  So it is within 30 days from the
 4   date the joint stipulation of dismissal is filed.
 5             And if there is a joint stipulation of dismissal
 6   filed, you need to condition it on the Court retaining
 7   jurisdiction if you want me to retain jurisdiction to enforce.
 8   So it has to be specific.
 9             The Eleventh Circuit is very particular about this, I
10   am sure you know.  And I always agree to retain jurisdiction
11   for a period of time to make sure there are no issues.  When
12   the joint stipulation of dismissal is filed that ball is in
13   your court, Mr. Mathews.
14             I've had people dismissed today, you know, the same
15   day, but here, you know, just ore tenus.  And the part of the
16   settlement agreement is a written agreement that will be
17   executed and the appropriate releases will be executed.  And
18   then, it becomes 30 days from the date I enter the order.
19             But in light of this and because I think you had some
20   nonmaterial terms that you may need to work out, you can
21   execute the settlement agreement.  You can file the joint
22   stipulation of dismissal conditioned on the Court retaining
23   jurisdiction for 60 days with, you know, the provision that
24   payment will be made 30 days after the joint stipulation is
25   filed, or I can retain jurisdiction for 90 days.
```

```
 1              Whatever it is you want under the circumstances.  And
 2   that will give you an opportunity to talk to each other and to
 3   work out the final details before anything is done.
 4              And if you want, I don't know what your schedule is
 5   tomorrow, Mr. Mathews.  I don't even know --
 6              MR. ANDREWS:  Mine is pretty clear, Your Honor.
 7              THE COURT:  And I am trying to pull up mine for
 8   tomorrow because I don't have my calendar up.
 9              Okay.  I can do it tomorrow afternoon.  I would say
10   around 3:00 tomorrow afternoon, a telephonic hearing.
11              MR. ANDREWS:  That should be fine for me, Your Honor.
12              THE COURT:  Well, if you need to change it you can
13   change it.
14              MR. ANDREWS:  Okay.  Morning, I know the morning,
15   midmorning would be better.  Either mid morning Wednesday or
16   Thursday would be better, but if I need to change it I will
17   just change it.
18              THE COURT:  I can do it -- I can't do it tomorrow
19   morning.  I can do it, like I say, tomorrow afternoon.  I can
20   do it Thursday, at around maybe 10:00 in the morning on
21   Thursday.
22              MR. ANDREWS:  Your Honor, could I make a suggestion?
23              THE COURT:  Yes.
24              MR. ANDREWS:  Peter, why don't you call me tomorrow
25   and we will discuss everything we need to discuss.  And then,
```

```
 1  we will pick out either 10:00 Thursday or 3:00 Friday and let
 2  the Court know.  So that everything will be pretty much be
 3  decided by then.
 4          MR. MATHEWS:  I am okay with that plan, Mr. Andrews,
 5  but I don't know if I am available at those specific times.
 6  Actually I could it 3:00 Thursday.  That's fine.
 7          THE COURT:  I can't do 3:00.
 8          Because I'm the Chief Magistrate Judge, I attend the
 9  District Judges' meetings.  There is a District Judges' meeting
10  at 2:00 on Thursday in West Palm Beach.
11          So I will be in West Palm Beach representing all of my
12  colleagues at 2:00, which means I need to be able to leave here
13  probably by 11:30 because there's a little pre meeting at 1:00.
14          So I could do it Thursday morning.  Friday I have
15  criminal duty court.  It starts at 10:00.  I could do it at
16  9:00 on Friday morning.
17          MR. ANDREWS:  I would rather do it tomorrow afternoon
18  or early Thursday or Friday.
19          THE COURT:  And like I say, tomorrow morning I have a
20  doctor's appointment that I cannot reschedule.  And I don't
21  know when it will be over because, if you know doctors, it
22  could be a ten-minute appointment and you're there for four
23  hours.  But I know I will be available by 3:00, clearly, or I
24  will have died of hunger.  One or the other.
25          So I can do it at 3:00 tomorrow.  If you need to
```

1  change it, you can coordinate with my law clerk who will change
2  it, you know, who can make that adjustment.  And the clients
3  don't need to be present for that, for that brief telephonic
4  hearing that will just confirm everything.
5          MR. ANDREWS:  That's fine.
6          THE COURT:  Okay.
7          MR. MATHEWS:  Your Honor, just to confirm, I need to
8  appear telephonic as well.
9          THE COURT:  Yes.  It is strictly a telephonic hearing
10 with me and with counsel and if the parties want to be present
11 you can be.  You are not precluded.  I am just not requiring it
12 because I know you have, you know, things to do in your own
13 lives.
14         So is there anything else that I need to do at this
15 point?  And I will wait for you to file the appropriate consent
16 form, assuming everything works out, and you still want to
17 consent to my jurisdiction and you can file that as well on
18 your own.
19         And we're just going to reflect, the only thing the
20 minutes here will reflect is if the settlement conference is
21 adjourned and we're going to have a telephonic hearing.  I will
22 just tentatively set it for tomorrow at 3:00, but you can
23 change it by calling my chambers and then we will accommodate
24 you.
25         Does that make a certain amount of sense?

1        MR. ANDREWS:  Yes, ma'am.  Your Honor, thanks for all
2   your assistance today.
3        THE COURT:  And Mr. Mathews, does that --
4        MR. MATHEWS:  Yes, it does.  And likewise, thank you.
5        THE COURT:  And I would like to thank both of the
6   parties.  With all settlements nobody walks away entirely
7   happy.  Defendants usually walk away less happy than
8   Plaintiffs, but I know Plaintiffs frequently have greater
9   expectations and are disappointed as well, but it is in the
10  nature of the business.
11       And I think both sides should be aware that I think
12  that you were well represented by your attorneys in this case
13  and you've reached an outcome that appears to be in the best
14  interest of everybody.
15       And now, you can go about your lives and not be
16  interrupted by having to engage in the business of a lawsuit,
17  as opposed to your own personal endeavors.  So I want to thank
18  you and I want to thank the lawyers as well.
19       Is there anything else that you think I need to do
20  today, Mr. Mathews?
21       MR. MATHEWS:  Thank you so much, Your Honor.  Not that
22  I am aware of.
23       THE COURT:  Mr. Andrews, anything else?
24       MR. ANDREWS:  No, ma'am.
25       THE COURT:  Okay.  I will let you catch your plane and

```
 1  I will look forward to talking to the lawyers tomorrow
 2  afternoon at 3:00 by telephone, or at some alternative date in
 3  time that you have agreed on that is appropriate.
 4           Thank you.
 5           MR. MATHEWS:  Thank you, Your Honor.
 6           THE COURT:  Okay.  We will be in recess.
 7           (Thereupon, the proceedings concluded.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                          CERTIFICATE
 3
 4        I hereby certify that the foregoing transcript is an
 5   accurate transcript of the audio recorded proceedings in the
 6   above-entitled matter.
 7
 8
 9
10
     12/12/17                        Bonnie Joy Lewis,
11                            Registered Professional Reporter
                                 CASE LAW REPORTING, INC.
12                               7001 Southwest 13 Street,
                                Pembroke Pines, Florida 33023
13                                    954-985-8875
14
15
16
17
18
19
20
21
22
23
24
25
```